File by Fax

TURNER BOYD LLP
Attorneys at Law
Palo Alto, California

Julie S. Turner (State Bar No. 191146)
Karen I. Boyd (State Bar No. 189808)
TURNER BOYD LLP
2625 Middlefield Rd. #675
Palo Alto, California 94306
Telephone: (650) 494-1530
Facsimile: (650) 472-8028
Email: turner@turnerboyd.com
boyd@turnerboyd.com

Attorneys for Defendant
YELP! INC.

**FILED**

DEC 2 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELP! INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INSTAPLAK, INC. D/B/A IN THE SPOTLIGHT.COM, and MICHAEL STEPHEN STERN,<br><br>Defendants. | Civil Case No. CV 08 5761<br><br>**COMPLAINT FOR BREACH OF CONTRACT, TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DILUTION** EMC<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Yelp! Inc. ("Yelp") brings this action against Instaplak, Inc. d/b/a In The Spotlight.com ("Instaplak") and Michael Stephen Stern ("Stern") (collectively "Defendants"), and for its cause of action alleges:

## THE PARTIES

1. Plaintiff Yelp! Inc. is a corporation organized under the laws of the State of Delaware, and having its principle place of business at 706 Mission Street, San Francisco, California.

2. Upon information and belief, Defendant Instaplak, Inc. is a Colorado corporation formed on July 30, 2004, having an office and place of business at 1300 Walnut Street in Boulder, Colorado. Upon information and belief, Instaplak does business as InTheSpotlight.com, which

COMPLAINT                                                                                           CASE NO.

1 manufactures, markets and sells promotional plaques that feature content from other sources,
2 including Yelp's website.

3     3. Defendant Michael Stephen Stern is an individual who, upon information and belief,
4 resides at 1440 Riverside Avenue in Boulder, Colorado. Upon information and belief, Stern is the
5 president of Defendant Instaplak. Stern is one of the conscious, dominant and active forces behind
6 the wrongful activities of Instaplak. Stern committed these wrongful acts for the gain and benefit of
7 Instaplak, and for his own individual gain and benefit.

## JURISDICTION AND VENUE

10     4. This is an action for, *inter alia*, claims arising under the Trademark Act, 15 U.S.C.
11 § 1051, *et seq.*. This is also an action for breach of contract between diverse parties and the amount
12 in controversy exceeds $75,000.

13     5. This Court has original jurisdiction over the subject matter of this action pursuant to
14 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332 and 1338.

15     6. The Court has personal jurisdiction over the Defendants because Defendants
16 regularly transact business in this judicial district, acts complained of have occurred in this judicial
17 district, and Defendant Instaplak consented to the personal jurisdiction of this Court.
18 Venue is proper in this court because acts complained of have occurred in this judicial district.
19 Additionally, the contract which is the subject matter of the breach of contract claim was entered
20 into in San Francisco, California. By that contract, Defendant Instaplak consented to venue in this
21 Court and agreed that the laws of the State of California would govern any claims arising from the
22 Agreement.

## FACTS COMMON TO ALL COUNTS

25     7. Yelp was founded in 2004 by Jeremy Stoppelman and Russel Simmons.
26     8. Yelp operates a website (www.yelp.com) that helps consumers make more informed
27 choices about the businesses they patronize. The website features ratings and reviews of all types
28 of local businesses, among other information made available to consumers. More than fifteen

COMPLAINT                              2                              CASE NO.

million people use Yelp's website every month. Users of the site have contributed more than four million ratings and reviews of local businesses.

9. Yelp is the owner of all rights in and to service marks (collectively, the "Yelp Marks") that are the subject of the following registrations:

| Registration Number | Service Mark | Class |
|---|---|---|
| 3,181,664 | YELP | IC 35 |
| 3,316,616 | yelp | IC 35 |

10. Defendants manufacture, market, and sell promotional plaques that feature content from various sources, including Yelp's website (the "Yelp Plaques").

11. Defendants prominently feature the name "YELP!", the web address "YELP.COM," and content from Yelp's website on the Yelp Plaques.

12. Defendants advertise the availability of the Yelp Plaques on their website at www.inthespotlight.com. On that website, Defendants display the **yelp** mark with a link to Yelp's website. Defendants' website also features the name "Yelp" in a pull-down menu of promotional plaques that it offers.

13. Defendants manufacture, market, and sell Yelp Plaques commercially for the purpose of profiting from such activity.

14. Defendants began selling Yelp Plaques in 2007, without license from Yelp to use its service marks or any other intellectual property belonging to Yelp or its users.

15. On January 18, 2008, Yelp and Instaplak entered into a limited license agreement (the "Agreement") to allow Instaplak to sell Yelp Plaques.

16. The Agreement set forth the following relevant and material terms and conditions:

    (a) Yelp licensed to Instaplak the right to use, *inter alia*, Yelp's service marks, trade name, brand name, trade dress, and content from its website (such as ratings and reviews) in a specified format;

COMPLAINT 3 CASE NO.

  (b) Instaplak agreed to pay to Yelp a royalty based on the sales of Yelp Plaques;

  (c) The license had an initial term of 90 days, which could be renewed upon agreement of Instaplak and Yelp;

  (d) Instaplak agreed that, upon termination or expiration of the license, all licenses granted by Yelp would immediately terminate and Instaplak would immediately cease using, *inter alia*, Yelp's service marks, trade name, brand name, trade dress, and content from its website;

  (e) Instaplak further agreed that it would immediately cease "identify[ing] itself on its website, or to prospective customers, as being in any way affiliated or partnered with Yelp, including representations that Instaplak is an 'authorized provider' of Yelp plaques, or a 'strategic partner' of Yelp."

17. The parties to the Agreement did not renew the license. The Agreement expired on April 17, 2008, ninety days after the Effective Date.

18. Defendants nevertheless continued to manufacture, market, and sell Yelp Plaques.

19. On or about May 23, 2008, Yelp requested in writing that Defendants cease and desist from selling Yelp Plaques and from representing themselves as being affiliated and partnered with Yelp.

20. On or about July 1, 2008, Yelp again requested in writing that Defendants cease and desist from selling Yelp Plaques and representing themselves as being affiliated and partnered with Yelp.

21. On or about July 15, 2008, Yelp yet again requested that Defendants cease and desist from selling Yelp Plaques and representing themselves as being affiliated and partnered with Yelp.

22. Upon information and belief, Defendants continues to sell Yelp Plaques and represent themselves as being affiliated and partnered with Yelp without license from Yelp to do so.

23. Upon information and belief, Defendants' sales process includes notifying businesses that they have won "Best of Yelp" and offering to sell Yelp Plaques. Upon information and belief, a number of businesses receiving such solicitations have believed the solicitations to have come from and been endorsed by Yelp.

24. Defendants' use of the Yelp Marks, trade name, brand name, trade dress, and content from Yelp's website have caused confusion and diluted the Yelp Marks, and constitute a breach of material terms of the Agreement.

COMPLAINT                4                CASE NO.

25. Defendants' conduct has caused and continues to cause irreparable harm to Yelp for which there is no adequate remedy at law. Left unabated, Defendants' conduct will continue to irreparably harm Yelp.

26. Upon information and belief, since at least the year 2000, Defendant Stern and various of his companies operating under different versions of the name "In the Spotlight" and "Best of Boulder" have been the subject of trademark infringement lawsuits initiated by companies situated similarly to Yelp, including Zagat Survey, LLC; Bloomberg, L.P.; Forbes Management Co. Inc.; Time Inc.; Gruner & Jahr USA Publishing; and American City Business Journals, Inc. and Advance Magazine Publishers.

27. On or about August 19, 2008, a journalist for the Seattle Weekly, a publication in Seattle, Washington, reported about unauthorized promotional plaques that were allegedly being sold by Defendants, drawing the conclusion that "In the Spotlight's products give the impression that they were given out by the organizations whose reviews they publish, when in fact those organizations may be either unaware or even resentful of their content being used without permission." The report included the following quote attributed to Defendant Stern: "It's true that we're not authorized by them, but I haven't gotten the impression they really object."

## FIRST CAUSE OF ACTION—BREACH OF CONTRACT

### (Against Instaplak, Inc.)

28. Yelp hereby repeats and realleges every allegation stated in paragraph 1-27 above, as if stated fully herein.

29. A valid contract existed between Yelp and Instaplak.

30. Instaplak has materially breached the contract and continues to materially breach the contract.

31. Yelp has been and continues to be damaged by Instaplak's ongoing breach.

32. Instaplak's ongoing breach is causing Yelp to suffer irreparable harm for which monetary damages are inadequate to compensate.

## SECOND CAUSE OF ACTION—TRADEMARK INFRINGEMENT

COMPLAINT 5 CASE NO.

**(Against All Defendants)**

33. Yelp hereby repeats and realleges each and every allegation stated in paragraphs 1-32, as if stated fully herein.

34. The Yelp Marks are valid, protectable service marks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

35. Yelp is the owner and registrant of the Yelp Marks.

36. Defendants, severally and in concert, have used and continue to use the Yelp Marks without Yelp's consent, in a manner that is likely to cause confusion among ordinary purchasers as to the source of Defendants' goods.

37. Defendants' infringement of Yelp Marks was and is willful.

38. Yelp has been and continues to be damaged by Defendants' infringement.

## THIRD CAUSE OF ACTION—FALSE DESIGNATION OF ORIGIN

**(Against All Defendants)**

39. Yelp hereby repeats and realleges each and every allegation stated in paragraphs 1-38, as if stated fully herein.

40. The Yelp Marks are valid, protectable service marks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

41. Yelp is the owner and registrant of the Yelp Marks.

42. Yelp operates under and uses the trade name "Yelp" in connection with its services.

43. Defendants, severally and in concert, have made commercial use of the Yelp Marks, Yelp's trade name, and content from Yelp's website.

44. Defendants' use has been done in a manner that is likely to cause confusion about the origin of Defendants' goods, that is likely to cause confusion as to any affiliation, connection or association between Defendants and Yelp, and that is likely to cause confusion as to Yelp's endorsement or approval of Defendants' goods.

45. Yelp has not consented to Defendants' use of the Yelp Marks, trade name, or content on Yelp's website.

46. Defendants' unauthorized use of the Yelp Marks, trade name, and content on Yelp's website was and is willful.

47. Yelp has been and continues to be damaged by Defendants' actions.

## FOURTH CAUSE OF ACTION—DILUTION

### (Against All Defendants)

48. Yelp hereby repeats and realleges each and every allegation stated in paragraphs 1-47, as if stated fully herein.

49. Yelp owns the federally registered Yelp Marks.

50. The Yelp Marks are distinctive and famous.

51. Defendants, severally and in concert, have used and continue to use the Yelp Marks in commerce in connection with their goods.

52. Defendants' use of the Yelp Marks on its goods and promotional materials began after Yelp had been using the Yelp Marks.

53. Defendants' unauthorized use was and is willful.

54. Defendants' use of the Yelp Mark is likely to dilute their value.

## FIFTH CAUSE OF ACTION—UNFAIR COMPETITION

### (Against All Defendants)

55. Yelp hereby repeats and realleges each and every allegation stated in paragraphs 1-54, as if stated fully herein.

56. Defendants, severally and in concert, have used and continue to use the Yelp Marks on and in connection with goods.

57. Defendants' use of the Yelp Marks has caused actual confusion and is likely to cause confusion and mistake, and to deceive as to the origin of Defendants' goods, any affiliation or connection or association between Yelp and Defendants, and any sponsorship or approval of Defendants' goods and commercial activities by Yelp.

58. Defendants' use of the Yelp Marks was and is willful.

59. Yelp has been and continues to be damaged by Defendants' actions.

### **PRAYER FOR RELIEF**

WHEREFORE, Yelp! Inc. asks this Court to enter judgment in its favor against Defendants Instaplak, Inc. and Michael Stephen Stern and grant the following relief:

A. An adjudication that Instaplak, Inc., has breached and continues to breach the Agreement;

B. An adjudication that Defendants have infringed and continue to infringe Yelp's service mark as alleged above;

C. An adjudication that Defendants have falsely designated the origin of their goods as alleged above;

D. An adjudication that Defendants have engaged in trademark dilution as alleged above;

E. An adjudication that Defendants have engaged in unfair competition as alleged above;

F. An accounting of all damages sustained by Yelp as a result of Defendants' acts;

G. An accounting and disgorgement of all profits made by Defendants' as a result of their acts;

H. An award to Yelp of actual damages adequate to compensate Yelp for Defendants' breach of contract and acts of trademark infringement, false designation of origin, dilution and unfair competition, together with prejudgment and postjudgment interest;

I. An award to Yelp of enhanced damages, up to and including trebling of Yelp's damages pursuant to the Lanham Act, 15 U.S.C. § 1117;

J. An assessment of punitive damages against Defendants;

K. An award of Yelp's costs of suit and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 due to the exceptional nature of this case, or as otherwise permitted by law;

L. An order for specific performance of Instaplak's contractual obligations as alleged above;

COMPLAINT                                                           8                                                      CASE NO.

M.  A grant of a permanent injunction pursuant to 15 U.S.C. § 1116, enjoining Defendants, and each of their agents, servants, employees, principals, officers, attorneys, successors, assignees, and all those in active concert or participation with any of them, including related individuals and entities, customers, representatives, OEMs, dealers, and distributors, from further acts of (1) infringement, (2) false designation of origin, (3) dilution, and (4) unfair competition; and

N.  Any further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Yelp! Inc., demands a jury trial on all triable issues.

Dated: December 24, 2008                TURNER BOYD LLP

By: _____
Julie S. Turner

Attorneys for Plaintiff
YELP! INC.

COMPLAINT                              9                              CASE NO.